31 P.(2d) 249

**CRABTREE v. BOARD OF COUNTY COM'RS OF SOCORRO COUNTY et al.**

**No. 3869.**

Supreme Court of New Mexico.

March 27, 1934.

See, also, 37 N. M. 80, 18 P.(2d) 657.

James G. Fitch, of Socorro, and C. M. Botts and John F. Simms, both of Albuquerque, for appellant.

George S. Downer and Hugh B. Woodward, both of Albuquerque, for appellees.

WATSON, Chief Justice.

Plaintiff sues for himself and other taxpayers to annul a decree of the district court of Socorro county, and to cancel deed and contract made pursuant thereto. Final judgment went for defendants upon the sustaining of their general demurrer to the complaint. Plaintiff appeals.

Unpaid taxes aggregating more than $220,000 had, in eighteen years (1914–1931), accrued against the common lands of Sevilleta de La Joya grant. The county held tax deed based on sales for the assessments of 1923, 1924, 1925, and 1926. Taxes for 1927 were in judgment. Taxes for the years 1914 to 1922, inclusive, were embraced in a special assessment on the 1928 roll, and, together with the regular levies of 1928, 1929, 1930, and 1931, were unpaid and outstanding.

In this situation the state tax commission instituted a "suit to sell property or settle taxes for less than amount due." Comp. St. 1929, § 141-452. It is the decree in that suit that is under attack in this taxpayer's suit.

The decree authorized the county treasurer to compromise the taxes outstanding, and provided that tax lien certificates should be annulled, all conditioned upon a sale of the property pursuant to the decree. It was the evident purpose to pass title unincumbered by any tax liens. The decree directed the board of county commissioners and the state tax commission, jointly, to sell the lands, upon sealed bids, to the highest and best bidder, after publication of notice, and authorized conveyance by the board of county commissioners and the county treasurer, jointly, pursuant to such sale, and ordered submission of the deed, with the report of sale, for confirmation.

There was a provision in the decree which, in its practical operation, seems to amount to fixing an upset price of $55,000.

Of six bids received, but three are mentioned in the complaint. The Ellerd bid was $125,000, with some conditions unnecessary here to mention. Folbre and McKinney submitted two bids, one of which offered $100,000, the other $68,000, with an agreement to reconvey to the trustees of the grant for the benefit of the former owners the surface rights in 64,000 of the 216,000 acres.

The joint commission set up was unable to agree on a sale; the state tax commission deeming the Ellerd bid, and the board of county commissioners deeming the $68,000 Folbre and McKinney bid, highest and best. This situation was reported to the court, resulting in an order directing rejection of the Ellerd bid and that the joint commission consider and report further.

The matter was next before the court upon so-called majority and minority reports, showing that the three county commissioners and one of the state tax commissioners had voted to accept the Folbre and McKinney $68,000

bid as highest and best, while the other two state tax commissioners had voted to accept the $100,000 bid. The court thereupon approved the so-called majority report and entered its order authorizing and directing the joint commission to enter into a contract with Messrs. Folbre and McKinney in accordance with the terms of the offer, as accepted by the majority and reported to the court, and authorizing and directing the board of county commissioners and the county treasurer, jointly, to execute a deed pursuant to such contract, to be submitted to the court for approval.

The complaint does not allege, but we should perhaps assume, that the contract and deed so executed were formally approved or confirmed by the court. In any event, they were executed and, pursuant to the contract, placed in escrow in the First National Bank of Albuquerque.

Appellant specifies the following points relied upon for reversal:

(1) The function of taxation belongs entirely to the legislative department, and the judiciary has no inherent jurisdiction or power with respect thereto.

(2) Where a special power is conferred by the Legislature upon a court of general jurisdiction, the court must pursue the statute strictly, and cannot go beyond the special power conferred.

(3) In the instant case the court was without jurisdiction to make the orders and decrees under which the sale complained of was attempted to be made.

The first two are abstract propositions, the general soundness of which can scarcely be doubted. The third is an attempt to apply them in this case.

██ The first specific contention is that the statutory authority for this proceeding does not contemplate and will not support a sale made through or by any joint commission constituted as above stated.

It is true that the decree which the court is directed to make is one "authorizing the county treasurer to sell said property * * * for a sum not less than the minimum sum specified in such decree." But it is also true that the statute contemplates a large discretion in the court. The sale by the county treasurer is to be made "in such manner as prescribed by the court." We think it was within the court's power to reserve entire control of the sale by requiring the county treasurer to report the sale, and that it should be effective only on confirmation. We cannot doubt the power of the court to bring in the two official boards representing the state and the county, respectively, the parties beneficially interested in the transaction, in an advisory capacity. Nor do we suppose that the validity of the deed is at all affected by the fact that the county commissioners, whether gratuitously or by direction of the court, joined with the county treasurer in executing it. If the county treasurer could have refused to conform to the decree, a question not before us, his execution of the deed should here be taken as acquiescence in it.

We conclude that the decree rendered is in legal effect one authorizing the county treas-

236

urer to sell the property in a manner prescribed by the court.

■ The other specific objection goes not to the decree itself, but to the subsequent proceedings, including the contract and deed now in escrow. It challenges the power to make a sale of this land on the condition of a reconveyance of a portion of it to the original owners, particularly in view of the opportunity to sell free from such condition, for a much larger sum.

We must consider this transaction upon the present record. In the absence of any facts other than those stated, it would seem that $32,000 of public revenues have been employed to restore a part of the property to the original owners. We do not find authority for this in the statute, either expressed or to be implied.

The defense of this sale by the appellees is not impressive. They urge merely that it was within the wide discretion of the court, for the exercise of which in this manner "as a matter of fact and from the practical standpoint, many good and valid reasons existed." They state no reasons, as of course they cannot, being merely demurrants.

Appellees here overwork the court's discretion. It goes to the manner of sale, and to determining what is in the "public interest." It does not include a weighing of private interest as against public interest. The purpose of the statute is to collect the public revenues, not to dissipate them.

There may be plenty of reasons of policy to support this sale. The matter of policy, however, was for the Legislature. It still resides in that branch of the government, except as intrusted to the courts.

There may be legal reasons to support this sale. We do not here question it. We do not see how we can infer them. They must be pleaded.

Appellees say that they need not argue the justification for such sale, since the complaint, failing to allege any fraud, any act injurious to the parties involved, or any arbitrary exercise or abuse of the court's discretion, is insufficient as a collateral attack. Holding, as we must upon the present record, that the particular sale was beyond the court's power, it is of course subject to collateral attack.

We feel constrained to hold that the complaint sets forth a cause of action for cancellation of the deed and contract, and that the court erred in sustaining the general demurrer. The judgment will accordingly be reversed and the cause remanded, with a direction to proceed further in conformity herewith.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.